IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MICHELLE R. SCOGGINS,** | : | |
| | : | Case No. 2:24-cv-00377 |
| | : | |
| **Plaintiff,** | : | Chief Judge Algenon L. Marbley |
| | : | Magistrate Judge Chelsea M. Vascura |
| v. | : | |
| | : | |
| **MENARD, INC.** | : | |
| **d/b/a Midwest Manufacturing,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## **OPINION & ORDER**

This matter is before this Court on Defendants Menard, Inc. and Bill Nelson (collectively, "Defendants")'s Motion to Compel Arbitration and Dismiss, or Alternatively Stay Litigation Pending Arbitration. (ECF No. 7). For the reasons set forth below, this Court **DENIES** the Motion.

## I.  BACKGROUND

Plaintiff Michelle Scoggins began her career at Defendant, Menard, Inc. ("Menard") in February 2021 working as a forklift driver. (ECF No. 2 at 2). Plaintiff eventually became a supervisor, and remained employed with Menard until her termination in April 2023. (*Id*. at 2–3). Following her dismissal, Plaintiff filed suit in state court alleging that, throughout her time working for Menard, she experienced mistreatment and discrimination by her superiors and plant managers. (*Id*.). Specifically, Plaintiff alleges an incident of harassment in late 2021 in which her Assistant Plant Manager, Defendant Nelson, slammed a door in her face while disparaging her for being a woman. (*Id.* at 2). According to Plaintiff, Defendant Nelson stated: "what am I supposed to hold it open for you because you are a woman? Is it too heavy for you? All you have to do is turn the handle." (*Id*.). Plaintiff reported the incident to Menard's human resources department, but it did

1

not take any action in response. (*Id.*). Weeks later, Defendant Nelson allegedly yelled at Plaintiff, attempted to interfere with her work, intimidated her, and followed her out of the office while yelling, to the point that a third employee had to intervene to de-escalate the situation. (*Id*. at 3). Plaintiff also reported this incident to Human Resources. (*Id.*). Plaintiff alleges that she continued to experience harassment for the remaining duration of her employment and that she continued to report instances to Human Resources, to no avail. (*Id.*). She seeks relief for this conduct by way of six claims against Menard and two claims against the Assistant Plant Manager, Bill Nelson alleging state and federal retaliation, state law sex discrimination and harassment, and disability discrimination in violation of the Americans with Disabilities Act and state law. (*Id.*).[1]

After Defendants removed the state action to this Court, (ECF No. 1), Defendants filed the present Motion requesting this Court to compel arbitration for all claims and dismiss the civil action based on the arbitration agreement in Plaintiff's employment contract. (ECF No. 7). In the alternative, Defendants request an order staying the matter pending arbitration. (*Id.*). Accompanying their motion, Defendants provided a declaration confirming Plaintiff signed the arbitration agreement on the first day of her employment with Menard. (ECF No. 7-1). Plaintiff opposes arbitration, conceding the relevance and general enforceability of the arbitration agreement as to Menard but asking this Court to deny the Motion as to Defendant Bill Nelson. (ECF No. 8 at 5–6). Plaintiff argues that this Court cannot compel arbitration for the claims against Bill Nelson, as the language of the relevant arbitration agreement shows no intention to include supervisors and thus extends the contract only to Menard. (*Id*. at 5–7). Defendants responded in

---

[1] Plaintiff's briefing identifies the fifth claim as "Count V" and also identifies the sixth claim as "Count V." To be clear, there are six total claims. The fifth count refers to the first item labeled "Count V" whereas the sixth count refers to the second item labeled "Count V."

2

turn that Defendant Nelson is covered by the arbitration agreement as an employee of Menard. (ECF No. 11). This matter is now ripe for this Court's review.

## II.    LAW AND ANALYSIS

### A. The Arbitration Agreement's Applicability to Defendant Bill Nelson

Evaluating whether to grant a motion to compel arbitration requires four distinct determinations:

> [F]irst, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005).

Plaintiff does not dispute that she and Menard agreed to arbitrate, but argues that only her claims against Menard are arbitrable. (ECF No. 8). As such, since the validity of the arbitration agreement as to the claims against Menard is not in dispute here, this Court need not make these determinations as to Menard. Instead, this Court turns to the disputed issue: whether the arbitration agreement is equally enforceable as to the claims against Defendant Nelson as a non-signatory. Plaintiff argues the agreement covers Menard and Plaintiff only, such that the agreement does not extend to third party non-signatories like Defendant Nelson, while Defendant argues Defendant Nelson is entitled to enforce the agreement as an employee of Menard under Ohio law.

The Federal Arbitration Act ("FAA"), which governs the enforceability of arbitration provisions, was enacted to reverse centuries of common-law hostility to arbitration agreements. *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 511 (1974); 9 U.S.C. §§ 1–16. Since its passage, both the Supreme Court and the Sixth Circuit have made clear that issues concerning the scope of arbitration should be resolved in light of the strong federal policy in favor of arbitration. *See Moses*

*H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983); *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

Section 2 of the FAA provides that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629–30 (2009) (citing *Volt Info. Sci., Inc. v. Board of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). In the context of arbitration agreements, this section requires courts "to place such agreements upon the same footing as other contracts." *Id*. Section 3 entitles litigants in federal court to a stay of any action that is "referable to arbitration under an agreement in writing." 9 U.S.C. § 3. So, federal courts look to state law "concerning the validity, revocability, and enforceability of contracts generally" to determine whether a contract is binding under § 2 or enforceable under § 3. *Arthur Andersen LLP*, 556 U.S. at 631 (citing *Perry v. Thomas*, 482 U.S. 483, 493, n. 9 (1987)).

"As a general proposition, a party to an action cannot be required to arbitrate a dispute between itself and a second party unless those parties have previously agreed in writing to arbitration." *Panzica Constr. Co. v. GRE Ins. Group*, 8th Dist. No. 79931, 2002-Ohio-2023, ¶ 16. But "a litigant who was not a party to the relevant arbitration agreement may invoke § 3 if the relevant state contract law allows him to enforce the agreement." *Gifford v. Northwood Healthcare Grp., LLC*, No. 2:22-CV-4389, 2023 WL 2923498, at *2 (S.D. Ohio Apr. 10, 2023) (citing *Arthur Andersen LLP*, 556 U.S. at 632). Therefore, this Court looks to Ohio state contract law to assess whether Plaintiff's arbitration agreement with Menard applies to Defendant Nelson as a non-signatory.

4

Ohio courts recognize that when ordinary principles of contract and agency law require, a non-signatory agent may enforce an arbitration agreement between a plaintiff and the agent's principal. *Rivera v. Rent A Center, Inc.*, 8th Dist. Cuyahoga No. 101959, 2015-Ohio-3765, ¶ 20. In other words, "when nonparties to an arbitration agreement are employees of a party who is a signatory to the arbitration agreement, the terms of the arbitration agreement can legitimately be applied to the nonparty employees." *Terry v. Bishop Homes of Copley, Inc.*, 2003-Ohio-1468, ¶ 28 (citing *Manos v. Vizar* (July 9, 1997), 9th Dist. No. 96 CA 2581-M, at 3–4). The court in *Terry* relied on their previous holding in *Manos v. Vizar,* wherein the court determined that an employee is entitled to enforce an arbitration agreement even in the absence of privity if their actions as agent and employee of the employer serve as a basis for their potential liability. *Id.* at 4. The court found that the parties' basic intent was to provide a single arbitral forum to resolve all potential disputes, and therefore held that claims against non-parties whose interests are directly related to those in privity of the contract must be read to fall within the scope of the arbitration clause. *Id*.

The same is true in the present case. Here, both parties agree that the arbitration agreement in Plaintiff's contract is valid and enforceable as to the claims against Menard. (ECF No. 8). The dispute arises out of the applicability of the arbitration agreement to the claims against non-signatory Defendant Nelson. (*Id*.) Defendant Nelson was Plaintiff's immediate supervisor, and his potential liability for Plaintiff's claims stems from his conduct as an employee of Menard. (ECF No. 2). As Menard's employee, Defendant Nelson's interests are directly in privity with Menard and, based on the language of the agreement, Menard is seeking a single arbitral forum to resolve all of Plaintiff's employment disputes. Defendant Nelson is therefore covered by the arbitration agreement at issue here, and Ohio law enables him to enforce it to the same extent as Menard.

So at this juncture, Plaintiff could be compelled to arbitrate all six claims against both Defendants. In light of a recent expansion of protection for employees alleging instances of sexual harassment and sexual assault in the workplace, however, this Court must first assess whether the arbitration agreement is unenforceable.

**B. The "Ending Forced Arbitration of Sexual Assault and Sexual Harassment" Act**

President Biden enacted the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA") as a direct amendment of the FAA in order to allow persons alleging sexual assault and sexual harassment to forgo arbitration at their election. *See Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 560 (S.D.N.Y. 2023). And the EFAA explicitly refers the question of applicability to "a court, rather than an arbitrator[.]" 9 U.S.C. § 402(b); *Johnson*, 657 F. Supp. 3d at 550. After this amendment, then, this Court must determine whether Plaintiff's claims are covered by the EFAA. If the EFAA does, indeed, cover at least one of Plaintiff's claims, this Court must then assess what, if any, impact that has on Plaintiff's other claims.

*1. "Alleged" a Claim of Sexual Harassment*

As defined by the EFAA, a sexual harassment dispute is a dispute relating to "conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal or State law." 9 U.S.C. § 402(a). This standard necessitates the threshold procedural determination of what showing is necessary for a plaintiff to have "alleged" a claim of such conduct. This is an issue of first impression in this district, and this Court does not have the benefit of the parties' briefing on this question. So, two companion cases addressing this topic bear mentioning. *See Johnson*, 657 F. Supp. 3d at 560 and *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 586 (S.D.N.Y. 2023).

Both Johnson and Yost sought relief from their former employer, Everyrealm, for a variety of claims stemming from the plaintiffs' resignation and/or termination, including for sexual

6

harassment under both New York state law and Title VII. *Johnson*, 657 F. Supp. 3d at 548; *Yost*, 657 F. Supp. 3d at 575. Both plaintiffs' claims therefore teed up the EFAA for consideration, but differences in the plaintiffs' pleadings led to different holdings. In *Johnson*, "[t]he parties and amici dispute[d] the showing that must be made for a complaint to implicate the EFAA": Defendants asserted "the claim must be pled sufficient to sustain a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)" while Plaintiff's amici argued that "even a claim of sexual harassment that has not been plausibly pled implicates the EFAA[.]" 657 F. Supp. 3d at 551. Because the court found Johnson's state law sexual harassment claim had been "plausibly pled" such that it would survive Rule 12(b)(6) motion, it did not "resolve whether the EFAA can be implicated by a lesser pleading[.]" *Id.* The court, however, acknowledged that such a question was "raised by[] and resolved in" its companion case, *Yost*. *Id.*

As explanation for the slightly different procedural posture, the court in *Yost* emphasized that Yost's pleadings involved "distinct (and fewer) factual allegations relevant to the sexual harassment claim" compared to that in *Johnson*. 657 F. Supp. 3d at 577. After evaluating the "threadbare" factual allegations, the court determined that Johnson "fail[ed] to allege a plausible claim of sexual harassment under [the applicable New York law]." *Id.* at 582. The court therefore considered whether "the EFAA still operate[s] to invalidate a binding arbitration agreement" where "a plaintiff's only basis for claiming that a complaint triggers the EFAA are implausibly pled claims of sexual harassment[.]" *Id.* at 583. Acknowledging that "[t]he EFAA's text does not definitely decide this point," the court said it does not. *Id.* Rather, in the court's view, "the term 'alleged' as used in § 401(4) is best read to implicitly incorporate the plausibility standard." *Id.*

Before potentially reaching the question "raised by and resolved in" *Yost*, this Court must first determine whether Plaintiff's allegations relating to sexual harassment survive the "familiar

7

standards" of Rule 12(b)(6). *Johnson*, 657 F. Supp. 3d at 551. To survive a 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be facially plausible, "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Based on this standard, a complaint is dismissed properly where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, this Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Substantively, Plaintiff alleges sexual harassment and sexual discrimination in violation of Ohio Rev. Code § 4112. The Ohio Supreme Court has recognized that discrimination "because of ... sex" may take either of two forms: "(1) 'quid pro quo' harassment, i.e., harassment that is directly linked to the grant or denial of a tangible economic benefit, or (2) 'hostile environment' harassment, i.e., harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment." *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 729 N.E.2d 726, 732 (Ohio 2000). While the complaint is quiet as to which form of discrimination Plaintiff alleges, Plaintiff does not contend that Defendants offered any benefit as a result of the alleged harassment.  So, based on the allegations, this Court focuses on whether she has alleged a hostile work environment claim.

Under Ohio law, establishing a claim for sexual harassment based on a hostile work environment requires a plaintiff to show that: (1) the harassment was unwelcome; (2) the harassment was based on sex; (3) the harassing conduct was sufficiently severe or pervasive to

affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment; and (4) either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action. *Id*.

At this stage, the Court need not assess the merits of the claims asserted. Rather, combining the procedural and substantive, the question is whether, when considering all allegations as true and drawing all reasonable inferences in favor of the Plaintiff, the complaint pleads sufficient facts in support of her sexual harassment claim to survive a 12(b)(6) motion to dismiss? Applying the four elements laid out above, this Court finds it does.

The filing of Plaintiff's post-incident reports to Menard Human Resources and the filing of the present suit support that Defendant Nelson's behavior was unwelcome, satisfying the first prong of the hostile work environment test. *See, e.g.*, *Beach v. Yellow Freight Sys.*, 312 F.3d 391, 396 (8th Cir. 2002) (holding plaintiff's repeated complaints to management adequately indicated conduct was unwelcome). In ascertaining whether the conduct was based on sex, this Court need look no further than Defendant Nelson's statement "because you are a woman" in the course of his harassment. (ECF No. 2 at 2). Such a statement directly implicates Plaintiff's sex as a motivator for Defendant Nelson's comments and actions.

As to whether the harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, this Court considers Plaintiff's termination by Menard, her work environment—in which she was subjected to yelling, interference, and intimidation—and her ongoing depression. (*Id*. at 2–3). This Court finds that each of these were either exacerbated by her work environment or affected the conditions of her employment. Finally, while Plaintiff is only required to show that either the harassing conduct was by a supervisor or that the

9

employer knew about the harassing conduct, the present matter satisfies both: (1) the harassment was committed by Plaintiff's supervisor Defendant Nelson; *and* (2) Menard knew or should have known of the harassment and failed to take immediate and appropriate corrective action after Plaintiff reported multiple incidences to Human Resources as early as 2021. (*See id*.).

Based on this alone, this Court finds that the Plaintiff presents a plausible claim of a hostile work environment under state law. And in drawing all reasonable inferences in favor of Plaintiff, this Court notes that the complaint references additional non-specific incidents of harassment that provide more support for this determination: beyond the discrete instances listed, Plaintiff notes that "Nelson continued to harass Plaintiff due to her sex, sexual orientation, and her documented depression, and Plaintiff continued to try to report those instances." (*Id*. at 3). Consequently, Plaintiff's claim is pled such that it would overcome a 12(b)(6) motion to dismiss, which places the claim within the substantive purview of the EFAA.

Circling back to the *Johnson* versus *Yost* divide, then, Plaintiff's case mirrors the former: as was the case in *Johnson*, Plaintiff alleges a plausible claim of sexual harassment even under the stricter 12(b)(6) standard, so this Court need not decide whether such a standard is universally appropriate for EFAA claims. *See, e.g.*, *Johnson*, 657 F. Supp. 3d at 551.

2. *Timing of Plaintiff's Claims*

Having determined that Plaintiff's claims are in the substantive net of the EFAA, this Court next evaluates whether the claims are temporally proper. In a historical note, the EFAA provides that "[t]his Act, and the amendments made by this Act, shall apply with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act." Pub. L. 117-90, § 3, Mar. 3, 2022, 136 Stat. 28. Seemingly, then, the EFAA is not intended to be retroactive. But courts have

10

struggled to identify what exactly must occur on or after the effective date of March 3, 2022, to bring a claim under the EFAA's carveout.

Courts adopting a broader reading of the historical note have interpreted the language to provide two distinct calculations, either of which is sufficient trigger the EFAA: when the "disputes ... arise" and when the "claims ... accrue." *Hodgin v. Intensive Care Consortium, Inc.*, 666 F. Supp. 3d 1326, 1330 (S.D. Fla. 2023). In their view, this interpretation "is the only way to reconcile the redundancy of saying that a claim arises *and* accrues; to say otherwise would make no sense as those dates would be the same." *Id*. This Court agrees, so this Court identifies when Plaintiff's dispute arose and when Plaintiff's claims accrued to determine whether either of these occurred on or after the EFAA's effective date of March 3, 2022.

### a. Dispute Arises

While courts disagree about when a dispute "arises" under the EFAA, this Court finds that a dispute does not necessarily "arise" at the time of the injury; a dispute requires more than just injury.

A "dispute" is defined as "[a] conflict or controversy, esp. one that has given rise to a particular lawsuit." *Dispute*, Black's Law Dictionary (11th ed. 2019). Similarly, a dispute is "an assertion of a right, claim, or demand on one side, met by contrary claims or allegations on the other," or "the subject of litigation." *Dispute*, Black's Law Dictionary (6th ed. 1990). A dispute "arises" when it "originate[s]" or "come[s] into being." *Arise*, Black's Law Dictionary (11th ed. 2019); *Arise*, Merriam Webster's Collegiate Dictionary (11th ed. 2003). Combined, then, a dispute arises when a person "asserts a right, claim, or demand and is met with disagreement on the other side." *Famuyide v. Chipotle Mexican Grill, Inc.*, No. CV 23-1127 (DWF/ECW), 2023 WL

11

5651915, at *3 (D. Minn. Aug. 31, 2023); *Hodgin*, 666 F. Supp. 3d at 1330; *Silverman v. DiscGenics, Inc.*, No. 22-cv-354, 2023 WL 2480054, at *2 (D. Utah Mar. 13, 2023).

Guided by the interpretive canon that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant," this Court turns to the EFAA's statutory scheme. *Corley v. United States*, 556 U.S. 303, 314 (2009). The EFAA defines a "sexual harassment dispute" as "a *dispute* relating to conduct that is alleged to constitute sexual harassment." 9 U.S.C. § 401 (emphasis added). If the mere conduct underlying a claim alone—the sexual harassment—automatically resulted in a dispute, then the legislature's inclusion of the word "dispute" in the definition would be superfluous: a "sexual harassment dispute" would mean "conduct that is alleged to constitute sexual harassment." *Id.* Under *Corley*, this interpretation is not tenable; construing all parts of the EFAA to give effect to each of its provisions necessitates that the conduct and the dispute are two distinct events.

Applied to Plaintiff, even though some of the alleged conduct may have occurred prior to the effective date of the EFAA, her dispute did not "arise" when the harassment took place. Rather, Plaintiff's dispute arose well after the conduct. While the conduct *giving rise to* the dispute began in 2021 and continued on, the dispute *arose* when she filed a complaint with the Ohio Civil Rights Commission in April 2023, as this put the parties in an "adversarial posture … in a forum with the potential to resolve the claim." *Hodgin*, 666 F. Supp. 3d at 1330. Since this filing falls after March 2022, Plaintiff's dispute falls within the EFAA's temporal scope. Such a conclusion is alone sufficient under this Court's interpretation of the EFAA's time-related confines, but for the sake of completeness, this Court also examines when Plaintiff's claim accrued.

b. *Claim Accrues*

Plaintiff alleges specific instances of sexual harassment in late 2021 and early 2022, prior to the EFAA's March 3, 2022 effective date. (ECF No. 2). Drawing reasonable inferences in Plaintiff's favor, however, Plaintiff alleges that the harassing behavior continued into 2022 and 2023, which this Court interprets as exemplifying a pattern of ongoing harassment throughout the pendency of Plaintiff's employment at Menard. (*Id.*). Courts have addressed similar patterns of harassment, finding that "though a claim accrues when the plaintiff has a complete and present cause of action," *Gabelli v. SEC*, 568 U.S. 442, 448–49 (2013), "the date of accrual for a claim … depends upon whether the plaintiff alleges isolated violations or a continuing violation of civil rights laws," *Barnes v. Festival Fun Parks, LLC*, No. 3:22-cv-165, 2023 WL 4209745, at *12 (W.D. Pa. June 27, 2023) (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 257 (1980), and *Newcombe-Dierl v. Amgen,* No. 2:22-cv-155, 2022 WL 3012211, at *5 (C.D. Cal. May 26, 2022)).

For allegations of isolated violations, "the claim accrues when the plaintiff knows of their injuries." *Id.* But where the plaintiff is "alleging a continuing violation of civil rights laws, the latest date for accrual is either the adverse employment action, such as the termination of employment, or the plaintiff's injury." *Id*. So, while Plaintiff alleges conduct beginning prior to the passage of the EFAA, Plaintiff contends that the harassment based on her sex continued into early 2022 and beyond the effective date of the EFAA through her termination in April 2023. Under this reading, the EFAA applies to Plaintiff's claim.

3. *Plaintiff's Additional Claims*

The present case includes six intertwined claims all stemming from Plaintiff's time employed by Menard. While not all six counts allege sexual harassment, at least one does, so this

13

Court must consider whether the EFAA renders the arbitration agreement unenforceable to all claims within this case or just the sexual harassment claim.

Traditionally, in the context of the FAA, "if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation." *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011). But the EFAA did away with this presumption by directly amending the FAA as opposed to amending a separate statute. *See Johnson,* 657 F. Supp. 3d at 560. The choice to do so "reinforces Congress's intent to override— in the sexual harassment context—the FAA's background principle that, in cases involving both arbitrable and non-arbitrable claims, the former must be sent to arbitration." *Id*. (citing *KPMG*, 565 U.S. at 19). With this legislative intent in mind, the language of the EFAA is clear that a pre-dispute arbitration agreement is invalid and unenforceable "with respect to a *case* … relat[ing] to the ... sexual harassment dispute." 9 U.S.C. § 402(a) (emphasis added). The EFAA "thus does not limit the invalidation to the claim or claims in which that dispute plays a part." *Johnson,* 657 F. Supp. 3d at 558. Standing in contrast to the terms "claim" or "cause of action," "case" captures the legal proceeding as an undivided whole; it does not differentiate among causes of action within it. *Id*. So, the arbitration agreement is unenforceable against the entirety of Plaintiff's *case*, not just her claims of sexual harassment. As such, this Court finds the entire case is precluded from arbitration under the EFAA.

### III. CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendants' Motion to Compel Arbitration and Stay this Case (ECF No. 7) as to all of Plaintiff's claims.

14

**IT IS SO ORDERED**.

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:** August 19, 2024